UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHAEL MCGEE,

        Petitioner,

  v.                                       Case No. 06-C-1151

BYRAN BARTOW,

        Respondent.

**MEMORANDUM DECISION AND
ORDER DENYING MOTION TO DISMISS**

Petitioner Michael McGee seeks relief from his civil commitment as a "sexually violent person" pursuant to Chapter 980 of the Wisconsin Statutes. The case is presently before me on the motion of the respondent to dismiss for procedural default. For the reasons that follow, respondent's motion will be denied.

Chapter 980 sets forth Wisconsin's procedure for civilly committing individuals previously convicted of a sexually assaultive offense who are deemed likely to re-offend. Motivated by a desire to protect the public, especially children, from the horror of sexual abuse and assault, Wisconsin was one of the early States to enact a law authorizing the indefinite detention of individuals previously convicted of a "sexually violent offense" upon completion of their sentence. Sex offender civil commitment laws, such as Wisconsin's, strike many as irreconcilable with the principles that underlie the traditional models of both criminal incarceration and civil commitment. Although reserved for individuals who have been previously convicted of a sexually violent offense, a Chapter 980 commitment does not constitute punishment for a crime. The double jeopardy clause

of the Fifth Amendment forbids a second punishment for the same crime and, by its explicit terms, a Chapter 980 commitment can only occur after a person has already been punished for his crime and is about to be released. Wis. Stat. § 980.015(2).

Nor does a Chapter 980 commitment rest on the presence of a mental illness that renders an individual legally incompetent and thus not responsible for his actions. While a person found "not guilty of or not responsible for a sexually violent offense by reason of insanity, mental disease, defect, or illness," is eligible for commitment under Chapter 980, see Wis. Stat. § 980.01(7), few, if any, of the individuals actually committed under Chapter 980 assert such a defense to their underlying crimes. Most, if not all, are presumed to be free human beings legally responsible for their crimes and thus deserving of the punishment that was previously imposed.

This is not to say that there is no mental health component to a Chapter 980 commitment. To be committed as a sexually violent offender, an individual must not only have previously committed a sexually violent offense, but he must have a mental disorder, meaning "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence." Wis. Stat. § 980.01(2). The mental health condition required for a Chapter 980 commitment, however, is not of the kind or severity that was traditionally thought necessary for the state to deprive an individual of his liberty. See, e.g., Foucha v. Louisiana, 504 U.S. 71 (1992) (plurality opinion) (holding that continued commitment of insanity acquittee on the basis of personality disorder without evidence of mental illness violates due process); Simpson v. State, 215 N.W.2d 435, (Wis. 1974) (rejecting argument that antisocial personality disorder constitutes a mental illness for purpose of insanity defense). To justify the commitment of a person previously convicted of a sex offense, the Supreme Court has ruled that it is enough to satisfy due

process that the state demonstrate that as a result of the metal disorder the individual has "serious difficulty in controlling [his] behavior." Kansas v. Crane, 534 U.S. 407, 413 (2002). The Wisconsin Supreme Court has construed this element as implicit in Chapter 980's requirement that the individual be proven "dangerous to others because the person's mental disorder makes it likely that he or she will engage acts of sexual violence." Wis. Stat. § 980.02(2)(c); see State v. Laxton, 647 N.W.2d 784, 793 (Wis. 2002); see also Laxton v. Bartow, 421 F.3d 565, 571 (7th Cir.2005) (affirming denial of habeas corpus relief). This element is typically established through the use of so-called "actuarial instruments" which are based on statistical profiles of other sexual offenders. See, e.g., In re Tainter, 2002 WI App 296, ¶¶ 4-5, 259 Wis. 2d 387, 392-93, 655 N.W.2d 538, 541; In re Brown, 2005 WL 3201267 *2 (Wis.App. Dec. 1, 2005). In this case, for example, the experts reported McGee's likelihood of re-conviction for a sexual offense within ten years at 48.6% based on the Rapid Risk Assessment for Sex Offense Recidivism (RRASOR) and 52% within fifteen years based on the Static-99. (Mot. to Dismiss, Ex. D, State Pet. for Habeas Corpus, Ex. F at 3.) Of course, a statistical profile based on other individuals says nothing about whether the specific individual who is then before the court will re-offend, since each individual is a free human being capable of choosing right or wrong. Moreover, even under the statistical model used by the State, roughly half of the individuals matching McGee's profile would not re-offend within the stated period of time but would nevertheless be eligible for indefinite confinement.

In any event, notwithstanding their seeming clash with traditional principles limiting the authority of the state to deprive individuals of their liberty, and even doubts as to their effectiveness, *see* Monica Davey and Abby Goodnough, Doubts Rise as States Hold Sex Offenders After Prison, The New York Times, March 4, 2007, sex offender civil commitment statutes have been upheld by

3

the Supreme Court and are increasing across the country. Kansas v.Hendricks, 521 U.S. 346 (1997); Kansas v. Crane, 534 U.S. 407. Thus, to the extent McGee's challenge to his confinement is directed at the authority of the State generally to confine an individual upon a determination that he is a sexually violent person, his challenge must fail. But McGee's challenge is more specific. McGee claims his incarceration under Chapter 980 violates the Constitution because it is based on a diagnosis of personality disorder that does not comport with the requirements of due process. The particular argument framed by the petitioner is that it would be unconstitutional to confine him based on "mere features of an antisocial personality disorder" as opposed to an "actual" diagnosis of antisocial personality disorder. (Reply Br. at 3.) The distinction he draws is a narrow one: he asserts that he is not challenging the state's general authority to commit an individual under Chapter 980 on the basis of a diagnosis of antisocial personality disorder, authority that the Seventh Circuit explicitly recognized in Adams v. Bartow, 330 F.3d 957 (7th Cir. 2003); instead, McGee is challenging the state's authority to commit someone (him) when that individual has not actually been diagnosed with such a disorder.[1] His argument brings to mind Justice Kennedy's caution in Hendricks that "if it were shown that mental abnormality is too imprecise a category to offer a solid basis for concluding that civil detention is justified, our precedents would not suffice to justify it." 521 U.S. at 373 (Kennedy, J., concurring).

  The merits of McGee's petition, however, are not presently before me. In response to McGee's petition, the respondent has filed a motion to dismiss in which he argues I cannot reach

---

[1]McGee's argument is not without merit. For a more scholarly discussion of the issue he raises, see Zander, Thomas K., Civil Commitment Without Psychosis: *The Law's Reliance on the Weakest Links in Psychodiagnosis,* Journal of Sexual Offender Civil Commitment: Science and the Law 1 (2005)

4

the merits of McGee's petition because McGee procedurally defaulted the claim by failing to properly raise it in the state courts so that those courts would have a full and fair opportunity to address it before he sought federal relief. Exhaustion of state court remedies is a prerequisite to seeking federal habeas corpus. See 28 U.S.C. § 2254(b)(1)(A); Kurzawa v. Jordan, 146 F.3d 435, 441 (7th Cir. 1998) ("Initially, the state courts must have had a 'fair opportunity' to consider a question of constitutional import before federal collateral review on that question is appropriate.") (citing Burgin v. Broglin, 900 F.2d 990, 996 (7th Cir. 1990)). Thus, if respondent is correct that McGee has not exhausted his state court remedies and he cannot show cause for his default and prejudice resulting therefrom, Richardson v. Briley, 401 F.3d 794, 801 (7th Cir. 2005), McGee's petition must be dismissed regardless of the merits. To address that issue, it is necessary to recount the procedural history of the case in some detail.

On November 23, 1987, McGee was convicted of burglary and second degree sexual assault in the Circuit Court for Racine County, Wisconsin. According to the complaint, McGee entered an apartment through a window and awakened a woman who had been sleeping on a couch with her two-year-old child. Stating something to the effect of "there isn't supposed to be anyone here," McGee ordered the woman who had just moved into the apartment not to awaken any of her children and then proceeded to rape her. (Mot. to Dismiss, Ex. B., ex. 4.) For this rape, the court sentenced McGee to eight years in prison, and for the burglary, the court imposed and stayed a sentence to prison and placed him on probation for six years consecutive to his prison sentence for the rape. When McGee was nearing the end of his sentence for the sexual assault, a petition to involuntarily commit him under Chapter 980 was filed. Although he was committed at that time, the commitment order was later vacated after the Wisconsin Court of Appeals remanded that case

5

to the circuit court for a post-commitment hearing. Having completed his sentence for the sexual assault, McGee was then released to begin the probationary term imposed for the burglary. (Mot. to Dismiss, Ex. B., at 7-8.)

Sometime thereafter, McGee's probation was revoked for a "dirty drug test," and he was returned to prison on the previously imposed but stayed sentence for the burglary. (Pet.'s Br. in Supp. of Habeas Corpus at 2.) In 2003, as he was again nearing the end of his sentence, this time for the burglary, the State filed a petition seeking his commitment under Chapter 980. (Mot. to Dismiss, Ex. B at 101.) Following a trial to the court in which McGee represented himself, he was found to be "a sexually violent person" as defined by Wis. Stat.§ 980.01(7) and committed to the custody of the Wisconsin Department of Health and Family Services until cured.

McGee, now represented by counsel, appealed his commitment to the Wisconsin Court of Appeals. However, McGee's attorney raised only two issues on his direct appeal. He claimed (1) that the evidence was insufficient to prove that the predicate offense alleged in the petition, namely the burglary, was sexually motivated as required by § 980.01(6)(b); and (2) that a new trial was warranted in the interest of justice. (Mot. to Dismiss, Ex. B at i-ii.) The Wisconsin Court of Appeals rejected both claims and affirmed the commitment. (Mot. to Dismiss, Ex. C.) McGee then filed a petition for state habeas corpus pursuant to State v. Knight, 484 N.W.2d 540 (1992), alleging that his appellate attorney was ineffective in failing to challenge his commitment on due process grounds. More specifically, McGee claimed, as he does in this case, that he was committed based on a diagnosis of personality disorder, not otherwise specified, with antisocial features. McGee argued that this diagnosis is essentially a "bogus disorder" that was invented by state psychologists to justify his continued confinement after he completed his sentence. (Mot. to Dismiss, Ex. D. at

6

3.) Citing the Wisconsin Supreme Court's decision in Simpson v. State, 62 Wis. 2d 605, 611-12, 215 N.W.2d 435, 439 (Wis. 1974), McGee also argued that an antisocial personality disorder, by definition, does not cause inability to control one's behavior. (*Id.* at 4.) Thus, he claimed that his involuntary commitment on the basis of such a diagnosis violated his Fourteenth Amendment right to due process of law as set forth by the United Supreme Court in Kansas v. Crane, 534 U.S. 407 (2002), and that his appellate attorney had provided constitutionally deficient performance in failing to raise the issue in his direct appeal.

The Wisconsin Court of Appeals denied McGee's pro se petition without really addressing the substantive due process issue he sought to raise. Finding McGee's argument "difficult to understand," the Court of Appeals construed his claim as a criticism of his attorney for failing to challenge the state's use of actuarial instruments to diagnose his mental disorder. (Mot. to Dismiss, Ex. E at 4.) The state court ignored McGee's claim that he could not be constitutionally committed based on a diagnosis of personality disorder, not otherwise specified, with antisocial features. It stated that McGee's petition was simply an attempt to retry the Chapter 980 proceeding and noted that its previous opinion affirming his commitment had focused on his intent in committing the underlying burglary and not the expert testimony. In an unexplained leap of logic, the Court then concluded: "Therefore, even if appellate counsel had made such arguments, they would not have been successful." (Id.) The Court thereupon denied the petition "on the grounds that McGee was not prejudiced by his appellate counsel's performance." (Id.) On October 10, 2006, McGee's petition for review was denied by the Wisconsin Supreme Court.

In order to exhaust state court remedies, a state prisoner must "establish that he fully and fairly presented his claims to the state appellate courts, thus giving the state courts a meaningful

7

opportunity to consider the substance of the claims that he later presents in his federal challenge." Bintz v. Bertrand, 403 F.3d 859, 863 (7th Cir.2005) (citing Harris v. McAdory, 334 F.3d 665, 668 (7th Cir.2003)). "Fair presentment in turn requires the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings." Lewis v. Sternes, 390 F.3d 1019, 1025 (7th Cir.2004) (citing O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)). To do so requires a petitioner to "put forward operative facts and controlling legal principles." Sweeney v. Carter, 361 F.3d 327, 332 (7th Cir.2004).

In light of the procedural history recounted above, I conclude that McGee has exhausted his state court remedies on the issue he seeks to raise here. It is true that the substantive due process issue was not raised on the direct appeal of his commitment, but that was hardly McGee's fault. McGee did raise the issue in his pro se notice of intent to appeal that he filed on his own behalf before counsel was appointed. (Pet. for Habeas Corpus, Ex. D.) His court-appointed attorney elected not to pursue the issue, however, and instead concentrated on the issue of whether the burglary which was alleged as the predicate offense was sexually motivated. When his appellate attorney's effort failed, McGee filed his Knight petition alleging the his appellate counsel was ineffective in failing to press the issue on his appeal. Although McGee's presentation of the issue was not pristine (few pro se petitions are), I conclude the state courts had a fair opportunity to consider the gist of the McGee's claim, which was that due process was violated because of the state's reliance upon a diagnosis not recognized in the field of mental health as a basis to civilly confine an individual indefinitely. (Pet. to Dismiss, Ex. D. at 6.) The fact that McGee's attorney did not raise the issue on direct appeal is of no consequence since McGee presented the issue to the

8

Wisconsin courts in the context of an ineffective assistance of counsel claim. McGee's state petition for habeas corpus, along with his petition for review of the Court of Appeal's decision denying his petition, afforded the Wisconsin courts a full and fair opportunity to address his claim that a commitment based on a diagnosis of "personality disorder, not otherwise specified, with antisocial features" does not comport with due process.

I therefore conclude that McGee has exhausted his state court remedies and respondent's motion to dismiss (Doc. # 10) is DENIED. Within 30 days of the date of this order respondent is directed to answer the petition, complying with Rule 5 of the Rules Governing § 2254 Cases, and showing cause, if any, why the writ should not issue. Respondent's brief on the merits of the petition, including the question of whether the petitioner's claim was "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d), is due by June 1, 2007. Petitioner may file a reply, if any, by June 20, 2007.

Respondent's motion to dismiss Steve Watters as a respondent in this matter on the ground that he is not McGee's custodian and thus not a proper party (Doc. # 9) is unopposed and will therefore be GRANTED. Petitioner's motion to amend his petition (Doc. #6) is DENIED as moot: the case will proceed on the merits of the petitioner's claim, meaning that the form of the petition is no longer relevant.

SO ORDERED this 3rd day of April, 2007.

    s/ William C. Griesbach
William C. Griesbach
United States District Judge

9

Case 1:06-cv-01151-WCG   Filed 04/03/07   Page 9 of 9   Document 12