UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHAEL McGEE,

        Petitioner

   v.                                              Case No. 06-C-1151

BYRAN BARTOW,

        Respondent.

**DECISION AND ORDER**

      Michael L. McGee is, to use Wisconsin's parlance, a "sexually violent person." Wis. Stat. § 980.01(7). He committed a sexual assault in the midst of breaking into a house he thought would be empty. Soon before McGee was due to be released from a revoked probation (drugs were the cause of the revocation), the state petitioned to keep McGee locked up under its Chapter 980 program because it believed he was likely to commit another sex crime. The state argued that the burglary was a sexually motivated offense and that McGee suffered from a mental disorder that made him likely to reoffend. After a trial in which McGee represented himself, the judge found that McGee met the state's requirements for involuntary incarceration under Chapter 980.

      Earlier in these proceedings, the state moved to dismiss on the ground that McGee had procedurally defaulted the claim he now brings in this § 2254 petition. I disagreed, finding that McGee had presented the essence of his claim to the state courts. The petition is thus ready for evaluation on its merits. For the reasons given below, the petition will be dismissed.

As set forth in this court's order denying the respondent's motion to dismiss, McGee's claim is that due process was violated because the state relied upon a diagnosis not recognized in the field of mental health as a basis to civilly confine an individual indefinitely. In McGee's case, the diagnosis was personality disorder NOS (not otherwise specified) with antisocial features, and McGee argues that this is essentially a bogus, outcome-driven diagnosis tailored to keep him locked up. He also incorporates into this argument a claim that the state experts' use of actuarial instruments to predict his future dangerousness violates due process.[1]

That brings us to the standard of review. Typically a federal court gives significant deference to the legal and factual determinations of the state courts, a practice based on comity, economy, and 28 U.S.C. § 2254(d). But when the state courts do not even reach the question raised in the federal habeas petition, there is no decision to which a federal court may defer. Thus, the deference required by § 2254(d) only applies to "any claim that was adjudicated on the merits in State court proceedings." Because McGee's claim was not adjudicated on the merits in state court, the respondent concedes that the § 2254(d) standard of review does not apply. Instead, courts in such a case are required to "dispose of the matter as law and justice require." *Guest v. McCann,* 474 F.3d 926, 931 (7th Cir. 2007); 28 U.S.C. § 2243.

As noted earlier in these proceedings, McGee's argument is quite narrow. He is not challenging the ability of the state to incarcerate anyone based on an antisocial personality disorder; instead, he argues that his own diagnosis (which he describes as "features" of a personality disorder)

---

[1] Although this is the essence of McGee's claim, and the state has briefed the claim in its own right, it seems that actually McGee's claim – the one exhausted in the state courts – is that his appellate lawyer was ineffective for failing to make this argument. But because I find the claim ultimately fails, it follows that his appellate counsel was not ineffective for failing to raise it in McGee's appeal.

2

does not live up to the Supreme Court's requirements for due process. Essentially, his claim is that personality disorder NOS, combined with reliance on actuarial assessments that attempt to predict his future dangerousness, do not provide sufficient evidence that he meets the Supreme Court's requirements for involuntary incarceration.

In *Kansas v. Crane,* the Supreme Court made clear that courts should be driven more by practical considerations than the technical distinctions underlying much of psychiatry.

> we did not give to the phrase "lack of control" a particularly narrow or technical meaning. And we recognize that in cases where lack of control is at issue, "inability to control behavior" will not be demonstrable with mathematical precision. It is enough to say that there must be proof of serious difficulty in controlling behavior.

534 U.S. 407, 413 (2002). That is, there are no magic words that a court or jury can use to determine if an individual may be incarcerated because he lacks control. And just as there are no magic words, there are no magic diagnoses: the state defines a "mental disorder" as "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence." Wis. Stat. § 980.01(2). Thus, all that is required is a mental condition predisposing the defendant to commit acts of sexual violence. In other words, for due process purposes it matters little whether the disorder is described as "antisocial personality disorder" or "personality disorder with antisocial features."

The Seventh Circuit considered an argument similar to the one McGee makes in *Adams v. Bartow*: "The essence of Adams' claim is that it is a violation of due process to civilly commit a person based solely on the fact that he is a previously convicted sex offender with APD [antisocial personality disorder]." 330 F.3d 957, 960 (7th Cir. 2003). The court rejected this claim for a number of reasons. Key among them was that Adams – like McGee – had *not* been committed

3

"solely" on the basis that he had APD and had committed a prior sexual offense. Indeed, because roughly half of all prison inmates are likely diagnosable with APD, an APD diagnosis on its own would not suffice to distinguish dangerous, committable sex predators from more common recidivists. In other words, if APD plus a prior sex offense were enough, thousands of inmates would be eligible for Chapter 980 and similar programs, which would mean that "'civil commitment' [would] become a 'mechanism for retribution or general deterrence'-functions properly those of criminal law, not civil commitment." *Crane*, 534 U.S. at 412 (quoting *Hendricks,* 521 U.S. at 372-73 (Kennedy, J., concurring)).

Thus the *Adams* court seemed to suggest that it would be impermissible to commit a defendant *solely* because he had an APD diagnosis and a prior sex offense. In that sense, McGee is correct that he may not be incarcerated solely because he has a personality disorder NOS. Yet, as noted in *Adams*, the personality disorder was not the entire basis for Adams' confinement; as the Seventh Circuit concluded: "The court [of appeals] found Adams eligible for confinement under Chapter 980 not only because he is a sex offender with APD but also because there was enough evidence in the trial record to establish that Adams was "substantially probable" to commit another sexually violent offense." 300 F.3d at 962. In particular, what distinguished Adams from the typical recidivist was his history of offenses, treatment failure, and the opinion of both a psychologist and a psychiatrist that there was a "substantial probability that [Adams] will reoffend or recommit a sexually violent act." *Id.* at 959.

The same is true here. McGee was committed not solely because he had a personality disorder with antisocial features. As in *Adams*, two mental health professionals, Drs. Roberts and Marsh, opined that McGee had personality disorder NOS with antisocial features; Dr. Marsh also

4

diagnosed McGee with paraphilia NOS. The trial judge found their testimony credible, even "impressive." (Tr. 58.[2]) The experts concluded not only that McGee had a personality disorder, but that he had serious difficulty controlling his behavior. As Dr. Roberts noted in his report, McGee had a disorder that "predispose[d] him to commit future sexually violent acts." (Petitioner's Br., Ex. F at 2.) McGee's argument suggests that, because some of this testimony was based on actuarial considerations, it does not distinguish him from a substantial minority or majority of prison inmates. Yet there is no indication that the actuarial data at issue here would have applied to most prison inmates; McGee's scores on the various actuarial models were conditioned on his own prior history. There is, in other words, nothing inherently wrong in an expert's use of actuarial-type instruments that predict future violence from past behavior: as the Seventh Circuit has noted in another case, "[e]ven Laxton's own expert acknowledged that his prior sexually violent acts could be a compelling predictor of future violent sexual offenses." *Laxton v. Bartow,* 421 F.3d 565, 572 (7th Cir. 2005); *see also, Carmony v. Hunter,* No. CIV S-03-0927 DFL JFM, 2006 WL 3762110, *15 (E. D. Cal. 2006) (noting that actuarial tests are commonly used in SVP cases); *Johnson v. Hunter,* No. C 03-3233 PJH, 2006 WL 2263932, *4 (N. D. Cal. 2006) (petitioner's confinement upheld when RRASOR score showed a 49.8 percent risk of re-offending, and Static 99 showed a score of five).

In sum, McGee was not incarcerated merely because he had "features" of a personality disorder; he was found to be a SVP based on testimony that he had a mental disorder that caused him to have serious difficulty controlling his behavior. That is what due process requires. *Crane*, 534 U.S. at 413.

---

[2] The transcript of the trial judge's findings is found at Docket No. 16, Ex. 84.

Accordingly, the petition is **DISMISSED**.

**SO ORDERED** this  23rd  day of August, 2007.

s/ William C. Griesbach
William C. Griesbach
United States District Judge